Relvy Esquivel
Reg. No. 37446-177
F.C.I. Oakdale
P.O. Box 5000
Oakdale, LA  71436



IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.

RELVY ESQUIVEL,

    Defendant-Movant

Case No. 08-CR-174

ESQUIVEL'S MEMORANDUM
OF LAW IN SUPPORT OF
RELIEF UNDER SECTION
2255 OF TITLE 28
UNITED STATES CODE

Under Section s 2255 ("Habeas"), or 1651 ("All Writs Act"), of Title 28 United States Code, Relvy Esquivel ("Esquivel"), respectfully submits this memorandum of law demonstrating his sentence is not tolerated under the Fifth, Sixth, Eighth, and Tenth Admendments viewed through the lens of the Ninth Amendment. Esquivel attests - under 28 U.S.C.  1746 - that these facts are true and correct to the best of his knowledge:

I. Introduction

Like in many federal drug cases law enforcement - acting with criminal informant - compels and unsuspecting individual into violating a questionable federal drug statute. See, Burgess v United States, 128 S.Ct. 1572 n.1 (2008)(acknowledging that "Title 21 of the United States Code has not been enacted as positive law ....").

This case arises from the arrest of a drug dealer in the Eastern District of Texas with the determination to avoid a lengthy prison sentence. Despite the presence of the abstention doctrine and Texas' unequivocal ability to prosecute illegal substances, the Drug Enforcement Administration ("DEA") embarked on a pilgrimage to have Esquivel prosecuted.

Here, the informant convinced the DEA that he could compel Esquivel into a cocaine transaction, and armed with this assurance the DEA instructed the informant to contact Esquivel and negotiate the purchase of cocaine. After a series of calls, Esquivel was convinced to engage in a five-kilogram cocaine transaction. The fact it took a series of calls to Esquivel demonstrates the informant had to convince him into this activity.

Once Esquivel agreed, the DEA and informant drove by his residence to confirm its location and layout. Based on the informant's information, the recorded calls, and the past reliability of the informant, the DEA secured a <u>state</u> search warrant for Esquivel's house. The search uncovered just over four kilograms of cocaine, and miscellaneous paraphernalia connected with controlled substances.

Despite the Tenth Amendment in conjunction with the Fifth, Sixth and Fourteenth Amendments the Government convened a grand jury and secured an indictment charging Esquivel with violating 21 U.S.C. 841(a)(1), (B)(1)(B)(ii), possession with intent to distribute a controlled substance. No attorney was provided until Esquivel's initial appearance.

Attorney Jason Douglas Hawkins ("Hawkins") - without challenging any Government action pre-arraignment - advised Esquivel to plead guilty without the benefit of a plea agreement exposing him to an immediate five-year mandatory minimum, and a maximum of forty-years. This advice included the assurance that Esquivel would receive the benefit of acceptance of responsibility.

On February 3, 2009, Esquivel appeared for sentencing on 500-grams of cocaine, where he learned that he would be deprived of acceptance of responsibility. That Court over ruled Esquivel's argument s and sentenced him to 240-months. He filed an unsuccessful appeal. United States v Esquivel, 353 Fed.Appx. 890 (5th Cir.2009), cert. denied, 187 L.Ed.2d 232 (Oct. 7, 2013). Then an unsuccessful Section 2255. See, Esquivel v United States, 2012 U.S. Dist. Lexis 167336 (N.D.Tx. 2012).

II. Section 2255, Alternatively 1651 is appropriate of this case

This action involves the implementation of the Controlled Substance Act following Bond v United States, 131 S.Ct. 2355 (2011) National Federation of Independent Business v Sebelius, 132 S.Ct. 2566 (2012); Alleyne v United States, 133 S.Ct. 2151 (2013); and soon, Bond v United States, 134 S.Ct. ____ (2014).

One simply cannot dispute this series of landmark rulings have developed since Esquivel's initial appeal and Section 2255. It is undisputed that not all section-in-time Section 2255 are "Second or Successive" for purposes of 28 U.S.C. 2244(b). See, United States v Orosco-Ramirez, 211 F.3d 862, 867 (5th Cir. 2000)("We

have, however, held that 'a prisoner's application is not second or successive simply because it follows an earlier federal petition.'")

The Supreme Court has specifically expanded that the phrase "Second or Successive" did not "refer to all Habeas applications filed second or successive in time." but was a "Term of art that takes its full meaning from its deciions ." See, Stewart v United States, 646 F.3d 856, 859-60 (11th Cir.2011). The Stewart Court drew its thought process form the Supreme Court's findings in Panetti v Quarterman, 551 U.S. 930, 947 (2007), where the High Court "declined to interpret second or successive in a manner that would require unripe (and often, factually unsupported) claims to be raised as a mere formality." Id., (internal quotation marks omitted).

Esquivel is, of course, referring to the doctrine of ripeness. As the Panetti court made plain: Requiring Petitioners to raise unripe claims prior to ripening to ensure habeas review tends to contravene the principles of "comity, finality and federalism" motivating the AEDPA. Id. at 945-46. In the end, Esquivel's instant motion is not "second or successive" for purposes of Section 2244(b).

Esquivel has one more arrow in his quiver. In his initial Section 2255, Esquivel was successful in his ineffective assistance claim connected to his appeal rights. In this vein, the order denying certiorari resets to zero the counter of collateral attacks pursued. See, Shepeck v United States, 150 F.3d 800, 801 (7th Cir. 1998)(Per Curiam); United States v Scott, 124 F.3d 1328, 1330 (10th Cir.1997)(Per Curiam).

The opposite conclusion has been reached in Orozco-Ramirez, where the claims were readily available, filed and adjudicated but obviously agreed that claims not yet ripe do not face Section 2244(b) restrictions. Esquivel's motion is not "second or successive."

Issue Presented: Esquivel stands convicted under 21 U.S.C. § 841(a)(1) which hinges on the effect on commerce. Mindful of Raich oes Alleyne in conjunction with Sebelius require commerce to be charged, and proved beyond a reasonable doubt or admitted.

The fact is Esquivel did not admit that his conduct had an effect on commerce, or was it charged. While Bond v United States, 131 S.Ct. 2355, 2366 (2011), held a criminal defendant has standing to pursue a Tenth Amendment challenge to the statute which he was charged as an unjustifiable expansion of federal law enforcement into a state domain.

Mindful of Gonzales v Raich, 545 U.S. 1 (2005), Esquivel fosters that the Supreme Court's recent ruling in National Federation of Independent of Business v Sebelius, 132 S.Ct. 2566 (2012), raises concerns regarding Congress' use of the commerce clause to criminalize compelled activity. In his controlling opinion, the Chief Justice acknowledged that the commerce clause permits Congress to regulate intrastate activities that have a substantial effect on interstate commerce but held that Congress may not regulate economic activity compelling it. Sebelius, 132 S.Ct. at 2587.

The Chief Justice's opinion raises a number of vexing legal questions. Foremost among them is determining what remains of Raich after Sebelius. Esquivel reads Sebelius as limiting Raich to the relatively narrow circumstance in which Congress is

attempting to regulate commodities, the intrastate production and consumption of which necessarily impact the interstate market. Sebelius, 132 S.Ct. at 2592. In this vein, in determining whether, as applied, the statute is an appropriate exercise of commerce power hinges, in this case, on whether it allows an individual to be compelled into a particular activity.

This, in turn, modifies Section 841(a)(1), limiting its reach to those individuals not compelled into activity. Esquivel was, however, compelled into the distribution of cocaine by the DEA through an informant. Therefore, since Esquivel has standing and Sebelius limits Congress' commerce power, Alleyne, in conjunction with Burrage v United States, 134 S.Ct. 881 (Jan. 27, 2014), modifies the elements of Section 841 to include a "but-for" element.

A. Legal Background

   I. The Commerce Clause

Following Sebelius, Supra, wholly intrastate activity is beyond the power of Congress "to regulate commerce ... among the several states." U.S. Const. Art. I, See, Sec. 8. See, The Federalist 42 (L. Madison)(Referring to the power "to regulate between state and state"). Protecting wholly intrastate commerce from the reach of Congress is a constitutional imperative in our federal system. To the extent the Control Substance Act purports to grant the Government's authority to conduct the activities complained of herein, such act exceeds the authority granted to Congress under the Commerce Clause.

2. <u>State Sovereignty As Confirmed in the Tenth Amendment</u>

Until <u>Bond v United States</u>, 131 S.Ct. 2355 (2011)(<u>Bond I</u>), prisoners lack standing to mount a Tenth Amendment challenge. With the Ninth Amendment Esquivel believes the grand jury is a critical proceeding where, in light of its determinations, a Tenth Amendment challenge is vested and counsel is required. That is, a grand jury proceeding is the forum where citizens decide where grounds exist to hale an individual into federal court. Because these individuals lacked standing until <u>Bond</u>, this particular issue has never seen a courtroom from a citizen. In fact, since Public Law 80-772 was heard in 1948 not a single statute has confronted a Tenth Amendment challenge with actual standing.

3. <u>Fundamental Constitutional Rights Protected by the Fifth and Sixth Amendments as Interpreted With the Ninth Amendment</u>

The Due Process Clause of the Fifth Amendment provides protection of unenumerated liberties against the government, as does the Sixth Amendment. The Ninth Amendment also provides protection under its express injunction that: "The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." U.S. Const. IX. To receive constitutional protection, an unenumerated liberty must have roots in "our nation's history, legal traditions and practices." Infringements upon fundamental liberties call for heightened scrutiny of the means by which Congress exercises its enumerated powers.

B.  <u>Argument s</u>

As discussed above, <u>Sebelius</u> has reined in bounds of the Commerce Clause and narrowed the decision in <u>Gonzales v Raich</u>, 545 U.S. 1 (2005). Moreover, <u>Sebelius</u> appears to forbid the Commerce Clause to be used to compel activity. Then, <u>Sebelius</u> calls for a fresh look at the lack of a jurisdictional element in the Controlled Substance Act ("CAS").

It is understood that the CSA, like the laws in <u>United States v Lopez</u>, 514 U.S. 549 (1995), and <u>United States v Morrison</u>, 529 U.S. 598 (2000), lacks any "jurisdictional element that would lend to the argument that it is sufficiently tied to interstate commerce." <u>Morrison</u>, 529 U.S. at 613 (Jurisdictional element could "ensure, through case-by-case inquiry, that the activity in question affects interstate commerce.") Indeed, the CSA does not require a showing of any effect on commerce, let alone interstate commerce. To be clear, this is an "as applied" challenge. More specifically, where Esquivel is compelled into the CSA.

"The existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of the commerce clause legislation." <u>Morrison</u>, 529 U.S. at 614. "Whether particular operations affect interstate commerce sufficiently to come under the constitutional power of Congress to regulate them is ultimately a judicial rather than a legislative question." Id. (quoting, <u>Lopez</u>, 514 U.S. at 557 n.2). Here the CSA simply was not valid legislation regarding being compelled into its reach. That is, the commerce element cannot arise from conduct that is compelled.

It is undisputed that law enforcement through an informant convinced Esquivel to engage in the transaction that led to his arrest. In other words, Esquivel did not solicit this informant into purchasing cocaine. In this vein, the federal government acted outside the reach of its commerce authority. Esquivel's conviction must be set aside and he be released.

Conclusion

Esquivel prays this Court finds the claim is now ripe and warranting the relief requested.

⇔37446-177⇔
Relvy Esquivel
5010 P.O. BOX
Federal Detention Center
Oakdale, LA 71463
United States

⇔37446-177⇔
Office Of The Clerk
Court OF Appeals
1100 Commerce ST
Room 1452
Dallas, TX 75242-1495
United States

MAY 2 7 2014

MAY 21 2014







